**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

NATHAN WILSON, Derivatively on Behalf of COUPANG, INC.,

Plaintiff,

v.

BOM SUK KIM, GAURAV ANAND, JASON CHILD, PEDRO FRANCESCHI, NEIL MEHTA, ASHA SHARMA, BENJAMIN SUN, AMBEREEN TOUBASSY, and KEVIN WARSH,

Defendants,

and,

COUPANG, INC.,

Nominal Defendant.

**Case No: 2:26-cv-01002**

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Nathan Wilson ("Plaintiff"), by and through Plaintiff's undersigned counsel, derivatively on behalf of Coupang, Inc. ("Coupang" or the "Company") submits this Verified Shareholder Derivative Complaint against current and former members of Coupang's board of directors (the "Board") and certain of its executive officers.

Plaintiff's allegations are based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Coupang's public documents, conference calls and announcements made by the Company and Individual Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Coupang, analysts' reports and advisories about the Company, and other information readily obtainable on the internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a shareholder derivative action that seeks to remedy wrongdoing committed by the Individual Defendants (defined herein) from May 7, 2025 through the present, both dates inclusive (the "Relevant Period").

2. Coupang portrays itself as a technology and commerce company that offers online retail, restaurant delivery, video streaming, and financial technology services. The Company's primary market is in South Korea.

3. Coupang's e-commerce platform and other services require the collection, storage, and transmission of data about its customers, merchants, and suppliers – including personal information and other sensitive and confidential data. As a result, Coupang's mitigation of internal and external security risks is essential to the Company and its customers.

4. Throughout the Relevant Period, the Individual Defendants provided investors with misleading assurances about the adequacy of its cybersecurity procedures and practices. In reality,



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Coupang and its customers were exposed to an increased risk of cyberattacks because Coupang failed to implement and maintain sufficient safeguards to detect and address internal and external cyberthreats.

5. In November 2025, Coupang became aware that its wholly owned subsidiary, Coupang Corp., suffered a material cybersecurity breach that began in June 2025 when a disgruntled former employee used his internal access keys, never revoked by the Company, along with a personal computer and MacBook laptop, to exploit a cybersecurity vulnerability and obtain Company and customer data from overseas servers months after his departure. This unauthorized access was not fully detected or identified by the Company for over 140 days, during which the former employee accessed pages containing personal details about 148 million times.

6. The truth began to emerge on November 29, 2025, when Coupang Corp. disclosed "unauthorized personal data access" involving "about 33.7 million" customer accounts in Korea, including "name, email address, phone number, shipping address, and certain order histories." Coupang Corp. explained that "it is believed that an unauthorized access to personal information began on June 24, 2025, via overseas servers."

7. On this news, Coupang common stock fell $1.51 per share, or about 5.36%, to close at $26.65 per share on December 1, 2025.

8. On December 10, 2025, Coupang Corp. announced that its Chief Executive Officer has resigned "in connection with the recent personal information leak incident." Coupang appointed its Chief Administrative Officer and General Counsel, Harold Rogers, as Coupang's interim CEO.

9. On this news, Coupang common stock fell $0.87 per share, or about 3.2%, to close at $26.06 per share on December 10, 2025.

10. On December 16, 2025, after markets closed, Coupang issued a press release filed with the SEC on Form 8-K, acknowledging that on November 18, 2025, Coupang and Coupang Corp. "became aware of a cybersecurity incident involving unauthorized access to customer accounts." The press release further revealed that "a former employee may have obtained the name, phone number, delivery address, and email address associated with up to 33 million customer



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

accounts, and certain order histories for a subset of the impacted accounts." Coupang also informed investors that "Korean regulators have initiated investigations with which Coupang is fully cooperating. While one or more Korean regulators will potentially impose financial penalties, at this time we cannot reasonably estimate any amount of losses or range of losses that may result from such penalties."

11. On this news, Coupang common stock fell $0.47 per share, or about 2%, to close at a price of $22.72 per share on December 17, 2025.

12. On February 10, 2026, the South Korean government released the results of its official investigation, characterizing the breach as a management failure, rather than a sophisticated cyberattack and confirming that approximately 33.7 million customer records were affected.

13. On this news, Coupang stock fell $0.29 per share, or 1.56%, to close at a price of $18.25 per share on February 10, 2026.

14. In light of the Individual Defendants' misconduct, the Company, its Chief Executive Officer and Chairman, and its Chief Financial Officer have been subjected to a federal securities class action lawsuit pending in the United States District Court for the Western District of Washington, captioned *Lee, et al. v. Coupang, et al,* Case No. 2:26-cv-00047 (W.D. Wash.) (the "Securities Class Action), exposing the Company to massive class-wide liability costs related to defending itself. The Individual Defendants' misconduct has further led to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefited from the wrongdoing alleged herein. The Company has been substantially damaged as a result of the Individual Defendants' misconduct.

15. In addition, during the Relevant Period, the Individual Defendants breached their fiduciary duties by causing Coupang to repurchase its own stock at prices that were artificially inflated due to the false and misleading statements. In total, the Company overpaid for repurchases of its own stock by over $28 million.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

16. Moreover, at least three of the Individual Defendants breached their fiduciary duties by engaging in lucrative insider trading while the Company's stock price was artificially inflated due to the false and misleading statements.

17. As a result of the Individual Defendants' breaches of fiduciary duties, the substantial likelihood of the directors' liability in this derivative action and the Securities Class Action, and that the Individual Defendants are beholden to each other based on their longstanding business and personal relationships, the Individual Defendants do not possess the requisite level of disinterestedness and independence to consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 because Plaintiff's claims raise a federal question under §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5). Plaintiff's claims also raise a federal question regarding the claims made in the Securities Class Action.

19. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it otherwise would not have.

21. Venue is proper in this District pursuant to § 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Coupang is headquartered in Seattle, Washington and many of the acts and omissions contained herein, including the alleged misstatements and omissions, took place in this judicial district.

## PARTIES

22. Plaintiff Nathan Wilson is a current shareholder of Coupang common stock and has continuously held Coupang common stock at all relevant times.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

23. Nominal Defendant Coupang is incorporated in Delaware. The Company's principal executive offices are located at 720 Olive Way, Suite 600, Seattle, Washington 98101. Coupang also maintains an office at 605 Fairchild Drive, Mountain View, California 94043. Coupang common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "CPNG."

24. Defendant Bom Kim ("Kim") founded Coupang and has served as Chief Executive Officer and Chairman of the Board of Directors (the "Board") since May 2010. Defendant Kim is a controlling shareholder of Coupang.

25. Defendant Gaurav Anand ("Anand") has served as Coupang's Chief Financial Officer ("CFO") since December 2020. Previously, Defendant Anand served as Chief Operating Officer from January 2019 until December 2020.

26. Defendant Jason Child ("Child") has served as Company director since April 2022. Defendant Child also serves as the Chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.

27. Defendant Pedro Franceschi ("Franceschi") has served as a Company director since March 2022. Defendant Franceschi also serves as a member of the Compensation Committee.

28. Defendant Neil Mehta ("Mehta") has served as a Company director since December 2010.

29. Defendant Asha Sharma ("Sharma") has served as a Company director since June 2024. Defendant Sharma also serves as a member of the Compensation Committee.

30. Defendant Benjamin Sun ("Sun") has served as a Company director since July 2010. Defendant Sun also serves as the Chair of the Compensation Committee and as a member of the Audit Committee.

31. Defendant Ambereen Toubassy ("Toubassy") has served as a Company director since March 2023. Defendant Toubassy also serves as a member of the Audit Committee.

32. Defendant Kevin Warsh ("Warsh") has served as a Company director since October 2019. Defendant Warsh also serves as the Chair of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

33. Defendants Kim, Anand, Child, Franceschi, Mehta, Sharma, Sun, Toubassy, and Warsh are collectively referred to herein as the "Individual Defendants" and with Coupang, as the "Defendants."

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

34. By reason of their positions as controlling shareholders, officers, directors, and/or fiduciaries of Coupang and because of their ability to control the business and corporate affairs of Coupang, the Individual Defendants owed Coupang and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Coupang in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Coupang and its shareholders so as to benefit all shareholders equally.

35. Each controlling shareholder, director, and officer of the Company owes to Coupang and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

36. The Individual Defendants, because of their positions of control and authority as controlling shareholders, directors, and/or officers of Coupang, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

37. To discharge their duties, the controlling shareholders, officers, and directors of Coupang were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

38. Each Individual Defendant, by virtue of their position as a controlling shareholder, director, and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as controlling shareholders, directors, and/or officers of Coupang, the absence of good faith on their part, or a reckless disregard for their duties to the



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also controlling shareholders, officers, and/or directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised a majority of the Company's Board at all relevant times.

39. As controlling shareholders, senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure the Company remained in compliance with all applicable laws.

40. To discharge their duties, the controlling shareholders, officers, and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the controlling shareholders, officers, and directors of Coupang were required to, among other things:

(a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Washington, and the United States, and pursuant to Coupang's corporate governance and applicable codes of conduct and/or ethics;

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(c) remain informed as to how Coupang conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of Coupang and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Coupang's operations would comply with all applicable laws and Coupang's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

41. Each of the Individual Defendants further owed to Coupang and the shareholders the duty of loyalty requiring that each favor Coupang's interest and that of its shareholders over their own while conducting the affairs of the Company and refraining from using their position, influence, or knowledge of the affairs of the Company to personal advantage.

42. At all relevant times, the Individual Defendants were agents of each other and Coupang and acting within the course and scope of such agency.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

43. Because of their advisory, executive, managerial, directorial, and controlling positions within the Company, each of the Individual Defendants had access to adverse, nonpublic information.

44. The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Coupang.

**COUPANG'S CODE OF CONDUCT**

45. Coupang's Code of Business Conduct and Ethics (the "Code of Conduct") applies to "our directors and officers, and all employees at every level of our organization ("Covered Persons"). Complying with the law and these principles and standards is not only a legal requirement; it is an ethical obligation for everyone at Coupang."

46. In a section titled "Responsibilities for Employees & Managers," under the subheading titled "For Our Employees:" the Code of Conduct states:

- Compliance: Follow the law at all times. If you see anyone violating the law or if you are asked to do something you believe may violate the law, speak up and report it immediately.
- Knowledge: Gain a basic understanding of this Code and our policies that are relevant to your work. You must also learn about any detailed business or country policies and understand how to apply them to your work.
- Awareness: Be aware of developments in your area that impact Coupang's compliance with laws and regulations. Coupang will update policies from time to time, so keep up to date with changes.
- Ask for help: From your manager, the Compliance department or other Coupang resources if you have questions about the application of this Code or our policies.
- Commitment: Report any ethics concerns about suspected or known non-compliance with this Code or our policies. Give your full and honest co-operation in any Coupang investigations.

47. In a section titled "Responsibilities for Employees & Managers," under the subheading titled "For Our Managers:" the Code of Conduct states:



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Culture: Coupang holds our leaders accountable for creating a culture of compliance where employees understand their responsibilities and feel comfortable reporting ethics concerns without fear of retaliation.

- Prevention: Set the example for compliance; not just through your words but through your actions. Your teams must understand that business results are never more important than ethical conduct and our compliance with laws, regulations, and our policies comes first. Communicate the importance of compliance and create an open environment where every employee feels comfortable reporting ethics concerns.
- Detection: With the assistance of the Compliance department, implement and monitor appropriate business processes. Conduct periodic compliance reviews to ensure ongoing effectiveness of business processes.

- Response: Take prompt corrective action to address identified compliance weaknesses. Document and escalate any employee's reported ethics concerns through the appropriate channels. Take appropriate disciplinary action where required.

48. In a section titled "Responsibilities for Employees & Managers," under the subheading titled "The Cost of Non-Compliance:" the Code of Conduct states:

- Disciplinary action: Employees and managers who do not fulfill their compliance responsibilities as required by this Code and Coupang's policies, or laws and regulations, will face disciplinary action up to and including termination of their employment, and in appropriate cases, possible civil legal action, or referral for criminal prosecution.

49. In a section titled "Speak Up if Something isn't Right," under the subheading titled "Speaking Up Isn't Easy, But" the Code of Conduct states:

- We must all strive to maintain a working environment that encourages employees to speak up if something does not look or feel right. When we report ethics concerns, we make Coupang stronger, and we protect our colleagues from harm. Speaking up also helps Coupang address issues early before more serious consequences develop.

- You do not need to be certain that a violation has occurred. Ethics concerns should be reported in good faith, which means that you have made a genuine attempt to provide honest and accurate information, even if you are later proven to have been mistaken.

- You have an obligation to report an ethics concern when you see a situation in which laws, regulations, this Code, or our policies are not being followed.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Retaliation against any employee who reports an ethics concern and/or participates in an investigation is prohibited and is grounds for disciplinary action up to and including termination of employment.

50. In a section titled "Compliance with Laws & Regulations" under the subheading titled Coupang Is Committed To:" the Code of Conduct states:

- Conducting business in an ethical, transparent, and professional manner, and in compliance with laws, regulations, and our policies.
- Incorporating legal and regulatory requirements into our business strategy and processes.
- Developing strong processes to anticipate risks, including new and changing legal and regulatory requirements.
- Providing employees and managers with access to the subject matter expertise needed to manage legal and regulatory risks.
- Monitoring regulatory compliance on an ongoing basis and periodically reviewing key processes.
- Remaining compliant with applicable licensing, permitting and other applicable rules and regulations in the locations where we operate.

51. In a section titled "Protection and use of company assets," under the subheading titled "Coupang is Committed To" the Code of Conduct states:

- Promoting protection and efficient use of company's assets by its directors, officers, and employees.
- Protecting the organization, shareholders, employees, customers, suppliers, service providers, and other stakeholders from risks of fraud, theft, and misuse, etc.
- Promoting integrity and transparency and prohibiting fraud, theft, and intentional misconduct of any kind against Coupang. This includes the theft or abuse of company funds, property, and assets of any kind for any purpose.
- Maintaining Anti-Fraud Policy that forms the framework to support and sustain effective fraud management across Coupang.

52. In a section titled "Covered Persons Must" under the subheading titled "Coupang is Committed To" the Code of Conduct states:

- Act with honesty, integrity, and professionalism.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Not engage in fraud, theft, or intentional dishonesty of any kind against Coupang, its employees, officers, directors, or business partners including creating falsified or forged documents, or abusing any position of trust.

- Not engage in activities such as theft, waste or abuse of company funds, property, or assets including cash, credit cards, equipment, supplies and other tangible and intangible assets.

- Use company property including information technology system, and other technology resources only for legitimate business purposes, although incidental personal use may be permitted basis adequate approvals.

- Report any actual or suspected incidents of fraud, theft or misuse of company's assets using any of the Speak Up channels.

53. In a section titled "Conflicts of Interest" under the subheading titled "Our Policy" the Code of Conduct states:

- We have a responsibility to all our stakeholders to make decisions based on Coupang's interests, without regard to personal gain. Covered persons must always make business decisions based on what is best for Coupang, never what is best for you or your household personally. Nothing you do should interfere, or appear to interfere, with your responsibility for objective and unbiased decision-making on behalf of Coupang.

- Covered Persons must disclose if any situation creates or could create a conflict of interest. Conflict of interest situations can come up in many ways including instances where Covered Persons have an interest or association (an outside business interest) that may interfere with Coupang's interests, or where Covered Persons have close personal relationships or close financial relationships with other colleagues or third parties.

- No activity of Covered Persons at work or at home should harm Coupang's reputation. Misusing company property, resources or influence is prohibited; even when nothing wrong is intended, the perception of a conflict may have a negative impact on Coupang.

54. In a section titled "Conflicts of Interest" under the subheading titled "Covered Persons Must" the Code of Conduct states:

- Promptly disclose any situation which creates, or could create, a conflict of interest.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Only use company property and assets to perform Coupang-related activities (and not for personal gain).

- Obtain prior approval from the People department before hiring or directly supervising someone with whom you have a family or close personal relationship.

- Obtain prior approval from the Compliance department before accepting director or officer positions with an outside business or not-for-profit organization.

- Disclose to the Compliance department any financial interests you have in any company where you could personally affect Coupang's business with that company.

- Not accept gifts, entertainment, or anything else of value from third parties doing business or seeking to do business with Coupang.

- Avoid participating in outside activities that compete with Coupang directly or indirectly.

- Avoid taking, or directing a third part to take, business or investment opportunities discovered through the use of Coupang's property, information, or position.

55. In a section titled "Protecting Personal & Business Information," under a subheading titled "Coupang Is Committed To:" the Code of Conduct states:

- Protecting personal and business information in compliance with applicable laws, regulations, and our policies (including our document management and retention requirements).

- Respecting and protecting the privacy rights of individuals. Coupang treats personal information with the care it deserves so that we can maintain the trust of our customers, partners, staff, and other individuals who we collect information from.

- Protecting our networks, systems, equipment, and information from external and insider threats. Coupang maintains robust controls to protect our systems and information, conducts security testing, and constantly monitors for cyber security threats and vulnerabilities.

- Disclosing material information regarding Coupang to the public only through approved processes and specific limited channels. Coupang coordinates its communications to ensure information is accurate, is properly disclosed, and that all those with an interest in the company will have equal access to such information.

56. In a section titled "Protecting Personal & Business Information," under a subheading titled "Covered Persons Must:" the Code of Conduct states:



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Only collect and retain personal and business information that is needed to perform your role. Manage information securely and in compliance with Coupang's policies, standards, and document management and retention requirements.

- Protect personal and business information from unauthorized or accidental access, loss, disclosure, or destruction. This includes limiting access to authorized individuals who need the information for legitimate business purposes, only using Coupang-approved systems and devices (and not using personal email, software, or devices to conduct Coupang business), and being aware of efforts by third parties to improperly obtain personal and business information.

57. In a section titled "Financial Integrity & Accounting," under the subheading titled "Coupang is Committed To:" the Code of Conduct states:

- Providing that our accounting and reporting completely and accurately reflects the economic substance of Coupang's business activities, consistent with generally accepted accounting principles, standards, and regulations for accounting and financial reporting.

- Preparing complete, accurate, and timely financial information for use in reports and other disclosures to management, investors, regulators, and other stakeholders.

- Ensuring that management decisions are based on sound economic analysis based on comprehensive facts and with appropriate consideration of the short- and long-term benefits and risks.

- Complying with all applicable laws and regulations as well as our policies and internal controls requirements, including regarding the retention of documents and records.

58. In a section titled "Financial Integrity & Accounting," under the subheading titled "Covered Persons Must:" the Code of Conduct states:

- Maintain complete, accurate, and timely records and accounts to appropriately reflect all business transactions.

- Create documents that are complete, accurate, and transparent, and follow our policies in determining when to retain and dispose of documents and records.

- Never engage in or support inappropriate transactions, including those that misrepresent the substance of a transaction.

- Maintain effective processes and internal controls that completely and accurately reflect transactions, as well as prevent or detect inappropriate transactions.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Speak up if you become aware of a questionable transaction or accounting by notifying the Accounting leadership team or using any of the Speak Up channels.

59. In a section titled "Insider Trading" under the subheading titled "Coupang is Committed To:" the Code of Conduct states:

- It is illegal to buy or sell stock or other securities based on material, non-public information or inside information. Inside information is any material, non-public information a reasonable investor is likely to consider important when making an investment decision. Some common examples would include periodic sales or earnings information for Coupang, Inc. prior to the public release of such information, projections of future earnings or loss or news of a significant event such as a pending merger, a change in operations structure, or a change in executive management.

- It is also illegal to communicate or tip inside information to others so they can buy or sell stock or other securities based on such information. If you are aware of inside information about Coupang or any other company with which Coupang does business (collectively, "business partners"), including our suppliers when you are aware of inside information about such business partner as a result of your employment or other relationship with Coupang, you are prohibited from trading directly or indirectly or tipping others to trade in stock or other securities of that company. These same restrictions apply to family members who reside with you, other household members and any other individuals or entities whose transactions in securities are influenced, directed, or controlled by you (unless otherwise determined by Coupang).

60. In a section titled "Insider Trading" under the subheading titled "Covered Persons Must:" the Code of Conduct states:

- Never buy or sell stock or other securities of Coupang or its business partners while you have inside information about that company.

- Never recommend anyone buy or sell stock or other securities of Coupang or its business partners while you have inside information about that company.

- Never disclose inside information about Coupang to anyone outside of Coupang (including your family members), unless such information has been released to the general public or unless such disclosure has been approved by the Corporate Securities department and only after the Corporate Securities department has informed you that adequate steps have been taken to prevent misuse of the information.

- Disclose inside information to people within Coupang only on a need-to-know basis.

- Never attempt to manipulate market prices or spread market rumors or false information.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Never buy or sell Coupang securities while the trading window is closed if you are subject to trading windows as described in Coupang's Insider Trading Policy.

- Obtain pre-clearance before trading in Coupang securities if you are subject to pre-clearance procedures as described in Coupang's Insider Trading Policy.

61. In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' issuance of materially false and misleading statements and omissions of material fact to the public and to facilitate and disguise the Individual Defendants' violations of law as alleged herein. In violation of the Code of Conduct, the Individual Defendants further failed to maintain internal controls, failed to obtain waivers and/or to disclose obtained waivers of violating the Code of Conduct, and failed to comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct.

## COUPANG'S AUDIT COMMITTEE CHARTER

62. According to Coupang's Audit Committee Charter, the purpose of the Audit Committee is to:

- oversee the Company's accounting and financial reporting processes, systems of internal control, financial statement audits and the integrity of the Company's financial statements;

- oversee the selection, engagement terms, fees, qualifications, independence, and performance of the registered public accounting firms engaged as the Company's independent outside auditors for the purpose of preparing or issuing an audit report or performing audit services (the "Auditors");

- maintain and foster an open avenue of communication with the Company's management, and Auditors;

- review any reports or disclosures required by applicable law and stock exchange listing requirements;

- help the Board oversee the Company's legal and regulatory compliance, including the internal audit function, legal function, compliance program, and risk assessment; and

- provide regular reports and information to the Board.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

63. Under the heading "Responsibilities," in a subheading titled "Financial Review and Disclosure:" the Audit Committee Charter states the responsibilities of the Audit Committee, in relevant part, as:

> 7. Audited Financial Statement Review; Quarterly and Annual Reports. The Committee will review the annual audited financial statements, the quarterly financial statements and the Company's "Management's Discussion and Analysis of Financial Condition and Results of Operations" and "Risk Factors," as appropriate, with management and the Auditors prior to filing. The Committee will be responsible for recommending to the Board whether the proposed financial statements should be included in the Company's Form 10-K.
>
> ***
>
> 9. Earnings Press Releases. The Committee will review and discuss earnings press releases, and corporate practices with respect to earnings press releases and financial information and earnings guidance provided to analysts and ratings agencies.
>
> 10. Accounting Principles and Policies. The Committee will review and discuss with management and the Auditors significant issues regarding accounting principles and financial-statement presentation, including:
>
> - critical accounting policies and practices;
> - alternative accounting policies available under GAAP;
> - the potential impact on the Company's financial statements of alternative treatments and any off-balance sheet structures; and
> - any other significant reporting issues and judgments, significant regulatory, legal, and accounting initiatives, or developments that may have a material impact on the Company's financial statements, compliance programs, and policies.

64. Under the heading "Responsibilities," in the subheading "Internal Control and Procedures:" the Audit Committee Charter defines the responsibilities of the Audit Committee, in relevant part, as:

> 12. Risk Assessment and Management. The Committee will review and discuss with management and the Auditors the Company's processes and policies on risk identification, management and assessment in all areas of the Company's business, but the Board shall continue to have overall responsibility for evaluating key business risks faced by the Company, including but not limited to information security, competition, and regulation. In exercising oversight of the Company's risk



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> identification and management processes, the Committee may consider issues such as the Company's policies and other matters relating to the Company's investments, cash management and foreign exchange management, major financial risk exposures, the adequacy and effectiveness of the Company's information security policies and practices and the internal controls regarding information security, and the steps taken by management to monitor and mitigate or otherwise control these exposures and to identify future risks.
>
> 13. Internal Control over Financial Reporting; Disclosure Controls. The Committee will confer with management and the Auditors concerning the scope, design, adequacy and effectiveness of internal control over financial reporting and the Company's disclosure controls and procedures. The Committee will review reports on significant findings and recommendations with respect to internal controls over financial reporting, together with management responses and, to the extent necessary, any remediation plans or special audit steps adopted in light of any material control deficiencies.
>
> 14. Correspondence with Regulators. The Committee will consider and review with management, the Auditors, and outside advisors or accountants any correspondence with regulators or governmental agencies and any published reports that raise material issues regarding the Company's financial statements or accounting policies.

65. Under the heading "Responsibilities," in the subheading titled "Other Matters:" the Audit Committee Charter defines the Audit Committee responsibilities in relevant part, as:

> 21. Other Legal and Finance Matters. The Committee will review with management legal and regulatory compliance and any actual, pending or threatened legal or financial matters that could significantly affect the Company's business or financial statements or as otherwise deemed appropriate by the Committee.

66. In violation of the Audit Committee Charter, the Individual Defendants conducted little, if any oversight of the Company's engagement in the Individual Defendants' issuance of materially false or misleading statements and omissions of material fact to the public and to facilitate and disguise the Individual Defendants' violations of law, as alleged herein. Moreover, in violation of the Audit Committee Charter, the Individual Defendants failed to maintain the accuracy of the Company records and reports, comply with laws and regulations, act in good faith and diligence without misstating, misrepresenting, or omitting material facts, and properly report violations of the Audit Committee Charter.

## **SUBSTANTIVE ALLEGATIONS**



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. Background

67. Coupang portrays itself as a technology and commerce company that offers a spectrum of services including online retail, restaurant delivery, video streaming, and financial technology solutions.

68. Coupang operates through two business segments: (1) Product Commerce and (2) Developing Offerings. In 2024, approximately 88 percent of the Company's total revenue was from the Product Commerce segment.

69. Although a global company, Coupang's primary market is in South Korea. In 2024, over 90 percent of the Company's total net revenues were from Korea.

70. Coupang Corp. is a wholly owned subsidiary of Coupang based in South Korea.

71. Prior to the start of the Relevant Period, the Individual Defendants routinely assured investors of the Company's understanding of and emphasis on effective cybersecurity measures. For example, in the Company's annual report for the 2024 fiscal year, filed with the SEC on Form 10-K on February 25, 2025 (the "2024 Annual Report"), Coupang claimed to have a "cyber risk management framework designed to identify, assess, and manage cyber related risks." The 2024 Annual Report highlighted the "extensive cybersecurity knowledge and skills" of Chief Information Security Officer Matthes and assured investors that Matthes was "updated on cybersecurity threats from experienced information security officers in our security organization on an ongoing basis and in conjunction with management" and "regularly review[ed] risk management measures implemented by the Company to identify and mitigate data protection and cybersecurity risks."

72. Coupang also relayed privacy assurances to investors and consumers through a privacy website. The privacy website, in a section titled, "Combining the power of technology with world-leading experts to keep you protected," states:

> The importance of providing secure and trusted services is deeply embedded within the culture of Coupang.
>
> We have world-leading systems and technology to keep your information safe and secure. Coupang monitors these systems around the clock, upgrading processes to adapt to changing cyber threats as they emerge. This is supported by continued and



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> significant investment into security and privacy to make sure our standards are aligned with, and where possible exceed global best practice. Coupang trains our staff in how to handle data. We aim to empower and encourage our people to challenge existing practices and believe it is the shared responsibility of every employee at Coupang to remain vigilant and committed to data security.
>
> We are also committed to working closely with governments and regulators to help shape the future of our industry.

## II. Materially False and Misleading Statements

73. On May 6, 2025, after the markets closed, Coupang issued its quarterly report on Form 10-Q for the first quarter of 2025 (the "1Q25 Report"). Pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), Defendants Kim and Anand signed and filed certifications with the 1Q25 Report attesting to the accuracy of Coupang's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

74. The 1Q25 Report stated, in relevant part:

> Item 1A. Risk Factors
>
> You should consider and read carefully all of the risks and uncertainties disclosed in Part 1, Item 1A, under the caption "Risk Factors," of our 2024 Form 10-K, which risks could materially and adversely affect our business, results of operations, financial condition, and liquidity. ***No material change in the risk factors discussed in such Form 10-K has occurred.*** Such risk factors may not be the only ones that we face because our business operations could also be affected by additional factors that are not presently known to us or that we currently consider to be immaterial to our operations. Our business operations could also be affected by additional factors that apply to all companies operating globally.

75. The 1Q25 Report referenced and incorporated risk disclosures from the Company's 2024 Annual Report which stated, in relevant part:

> Item 1A. Risk Factors
> * * * *
> Risks Related to Laws, Regulation, and Intellectual Property
> * * * *
> ***Any failure to protect our apps, websites, networks, and systems against security breaches or otherwise protect our and our customers' and business partners' confidential information could damage our reputation and brand and adversely affect our business, financial condition, and results of operations.***



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Our business employs websites, networks, and systems through which we collect, maintain, transmit, and store data about our customers, merchants, suppliers, advertisers, and others, including personally identifiable information, as well as other confidential and proprietary information. ***We rely on encryption and authentication technology in an effort to securely transmit confidential and sensitive information. However, security breaches or other security incidents have in the past resulted and could in the future result in the inadvertent or unauthorized use or disclosure of confidential and sensitive information we collect, store, or transmit, or otherwise enable third parties to gain unauthorized access to this information such as our inadvertent exposure of limited customer information within our App that occurred during an upgrade in 2021 and was remediated within an hour***. In addition, our apps, websites, networks, and systems are subject to security threats, including hacking of our systems, denial-of-service attacks, viruses, malicious software, ransomware, break-ins, phishing attacks, social engineering, security breaches, or other attacks and similar disruptions that may jeopardize the security of information stored in or transmitted by our apps, websites, networks, and systems, or that we otherwise maintain. Such risks extend not only to our own apps, websites, networks, and systems, but also to those of third-party services providers and our customers, contractors, business partners, vendors, and other third parties. Moreover, techniques used to obtain unauthorized access to or sabotage systems change frequently and are becoming increasingly sophisticated and may not be known until launched against us or our third-party service providers, increasing the difficulty of detecting and defending against such threats. We have observed an increase in the frequency of the security threats we and our third-party service providers face, and we expect these activities to continue to increase. Geopolitical tensions or conflicts, such as the conflict between Russia and Ukraine, and the increased adoption of artificial intelligence technologies, may further heighten the risk of cyber security incidents. In addition, security breaches can also occur as a result of non-technical issues, including intentional or inadvertent breaches by our employees or by persons with whom we have commercial relationships. ***As a result of any security breach, our reputation and brand could be damaged, our business could suffer, we could be required to expend significant capital and other resources to alleviate problems caused by such breaches, and we could be exposed to a risk of loss, litigation, or regulatory action and possible liability.*** Actual or anticipated attacks may cause us to incur increasing costs, including costs to deploy additional personnel and protection technologies, train employees, and engage third-party experts and consultants. ***Any compromise or breach of our security measures, or those of our third-party service providers, could violate applicable privacy, data security, and other laws, and cause significant legal and financial exposure, adverse publicity, and a loss of confidence in our security measures, which could have an adverse effect on our business, financial condition, and results of operations.***

We are also subject to regulations relating to privacy and use of confidential information of our consumers, including, among others, Korea's Personal Information Protection Act and related legislation, regulations and orders (the "PIPA"), China's



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> Personal Information Protection Act, the Act on the Promotion of Information and Communications Network Utilization and Protection of Information Act (Korea), and the Credit Information Act in Korea that specifically regulates certain sensitive personal information. PIPA requires consent by the consumer with respect to the use of his or her data and requires the persons responsible for management of personal data to take the necessary technological and managerial measures to prevent data breaches and, among other duties, to notify the Personal Information Protection Commission of any data breach incidents within 24 hours. Failure to comply with PIPA in any manner may subject these persons responsible to personal liability for not obtaining such consent in an appropriate manner or for such breaches, including even negligent breaches, and violators face varying penalties ranging from monetary penalties to imprisonment. We strive to take the necessary technological and managerial measures to comply with PIPA, including the implementation of privacy policies concerning the collection, use, and disclosure of subscriber data on our apps and websites, and we regularly review and update our policies and practices. Despite these efforts to comply with PIPA, these rules are complex and evolving, subject to interpretation by government regulators which may change over time and therefore we are subject to the risk of claims by regulators of failure to comply with PIPA. ***Any failure, or perceived failure, by us to comply with such policies, laws, regulations, and other legal obligations and regulatory guidance could adversely affect our reputation, brand, and business, and may result in claims, proceedings, or actions, including criminal proceedings, against us and certain of our executive officers by governmental entities or others or other liabilities*. *Any such claim, proceeding, or action, could hurt our reputation, brand, and business, force us to incur significant expenses in defense of such proceedings, distract our management, increase our costs of doing business, result in a loss of customers and merchants, and could have an adverse effect on our business, financial condition, and results of operations***.

76. The 2024 Annual Report was accompanied by SOX certifications signed by Defendants Kim and Anand attesting to the accuracy of Coupang's financial reporting, the disclosure of any material changes to the Company's internal controls, and the disclosure of all fraud.

77. On June 30, 2024, Coupang Corp., the wholly owned subsidiary of Coupang, issued a privacy notice to its Korean customers on its website, which stated, in relevant part:

> 6. Personal Information Safeguard Measures
>
> ***Coupang has technical and administrative safeguard measures in place to ensure that users' personal information is not stolen, leaked, forged or damaged while processing the information***.
>
> - Technical Safeguards: real-time monitoring and blocking of hacking attempts and data leak, enhanced access control on personal information processing systems, storage of access logs and prevention of their



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

forgery/alteration, at-rest encryption of passwords and critical information, and in-transit encryption of data

- Administrative Safeguards: ***Operation of a dedicated privacy team, regular training for PI handlers, awareness-raising activities toward employees, and regular inspection for compliance***

- Physical Safeguards: ***Install and operate the system in an area with controlled access from the outside, and establish and operate secure access control procedures***.

78. On July 15, 2025, a South Korean online media outlet, Boan News, published an article reporting that Coupang CISO Matthes had stated, at the Korea CISO Council 146th CISO Forum held that day, that "Coupang's []proactive security[] has improved threat visibility and mitigated potential cyber threats in advance[,]'" and that "'[a] shift in mindset to focus on the threat actor has significant benefits.'"

79. On August 5, 2025, after the markets closed, Coupang filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2025 (the "2Q25 Report"). SOX certifications signed by Defendants Kim and Anand attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud were attached to the 2Q25 Report.

80. The 2Q25 Report reiterated that "no material change in the risk factors discussed in [the 2024 Annual Report] has occurred."

81. On October 5, 2025, Defendant Kim discussed the Company's cybersecurity efforts during an interview with Forrester Research. In response to a question about the Company's threat management team, Defendant Kim highlighted Coupang's cybersecurity capabilities, stating that "[o]ur mission is to anticipate threats before they materialize and reduce attacker dwell time when incidents occur." Defendant Kim further explained that Coupang "is investing heavily in proactive defense, [not just] reactive response" and that the "teams have already made significant contributions to security improvements for the company through use of intelligence in potential threat actors."

82. On November 4, 2025, Coupang issued its quarterly report on Form 10-Q with the SEC for the third quarter of 2025 (the "3Q25 Report"). Attached to the 3Q25 Report were



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

certifications pursuant to SOX signed by Defendants Kim and Anand attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

83. The 3Q25 Report reiterated that "no material change in the risk factors discussed in [the 2024 Annual report] has occurred."

84. The above statements identified in ¶¶ 71-83 were materially false and/or misleading and failed to disclose material facts to make the statements, in light of the circumstances, not materially false and misleading. Specifically, the Individual Defendants failed to disclose to investors that: (1) Coupang had not maintained adequate cybersecurity procedures and practices to protect against internal and external security breaches; (2) as a result, there was a significant risk that Coupang's internal systems would be infiltrated; (3) the risk of a security breach materialized when a former Coupang employee accessed sensitive customer information beginning in June 2025; (4) due to the foregoing, Coupang would face increased regulatory scrutiny and its business would be adversely affected; and (5) as a result of the above, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH SLOWLY EMERGES

85. On November 29, 2025, Coupang Corp. issued a press release disclosing that on November 18, 2025, over a week earlier, it "became aware of unauthorized personal data access involving about 4,500 customer accounts" and that "it is believed that unauthorized access to personal information began on June 25, 2025, via overseas servers." The press release further represented that "[s]ubsequent investigation has revealed that ***the extent of customer account exposure is about 33.7 million accounts, all in Korea***" and that the compromised data was, purportedly, "limited to name, email address, phone number, shipping address, and certain order histories and does not include any payment details, credit card numbers, or login credentials, which remain securely protected."

86. News outlets subsequently reported on the security breach. For instance, that same day, South Korea's largest news network, Yonhap News Agency, published an article titled



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"Coupang Says 33.7 mln Customer Accounts Exposed in Data Leak[,]" detailing the scope of the breach and stating that "[g]iven that active users in Coupang's Produce Commerce division—which includes its delivery service—reached 24.7 million in the third quarter, the scale of the leak indicates that nearly the entire user base may have been affected."

87. On November 30, 2025, Reuters published an article titled "Top South Korean e-commerce firm Coupang apologises over massive data breach." The Reuters Article reported that Coupang had "apologised on Sunday over the breach of personal information from 33.7 million customer accounts through unauthorized data access[]" and that "[t]he government, ***which held an emergency meeting on Sunday, is looking into whether Coupang violated safety rules regarding personal information protection***, said Minister of Science and ICT Bae Kyung-hoon."

88. On December 1, 2025, *Bloomberg* published an article entitled "Massive Coupang Data Leak Caps Record Year for Cyber Breaches," stating that "[a] massive data breach at [Coupang] caps what is set to be a record year for online leaks in the country, highlighting weaknesses in Seoul's cyber defenses." The Bloomberg Article further stated that "***local media reported that a former Coupang employee could have exploited a system vulnerability.*** Officials warned that the compromised information could be used to carry out targeted phishing attacks." As the Bloomberg article explained, "Korean newspapers splashed the story across front pages [. . .] as worries mounted over possible disruptions following the breach. With nearly 25 million active users, many Korean families rely on the Amazon-like retailer for the bulk of their shopping, ***typically handling over sensitive information like apartment door codes to facilitate deliveries***."

89. On this news, Coupang common stock fell $1.51 per share, or 5.36%, to close at $26.65 on December 1, 2025.

90. On December 3, 2025, Korea JoonAng Daily published an article titled "Privacy regulator demands Coupang re-notify users of data breach as personal information 'leak'[.]" The article stated that South Korea's privacy regulator, the Personal Information Protection Commission ("PIPC"), said that "Coupang did not properly notify its customers of its recent major data breach and demanded a corrected notification, specifying personal information "leak," not an "exposure" of such data." According to the article, the PIPC also said that Coupang "partially omitted



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

stating which kinds of data had been affected and announced the breach on its website for only one to two days."

91. On December 10, 2025, Coupang Corp. issued a press release announcing the resignation of its CEO, Park Dae-joon "in connection with the recent personal information leak incident." In the press release, Dae-joon is quoted as stating, "'I am deeply sorry for disappointing the public with the recent personal information incident,'" adding, "'I feel a deep sense of responsibility for the outbreak and the subsequent recovery process, and I have decided to step down from all positions.'" According to the press release, Coupang's Chief Administrative Officer and General Counsel, Harold Rogers, was appointed as Coupang Corp.'s interim CEO.

92. That same day, *The New York Times* published an article titled "C.E.O. Resigns in Fallout Over Massive South Korean Data Breach," which stated, in part, the following:

> ***The head of the South Korean unit of the e-commerce company Coupang resigned on Wednesday***, as the fallout from a data breach affecting nearly 34 million users of the online shopping site intensifies.
>
> Park Dae-jun, who became the sole chief executive of Coupang's business in South Korea earlier this year, said in a statement released by the company that ***he was resigning to accept "grave responsibility" over the data leak***, which was announced last month. Coupang is headquartered in Seattle, but nearly all of its revenue comes from South Korea, ***where it is as ubiquitous as Amazon is in the United States.***
>
> Coupang first detected a data breach on Nov. 18 that exposed the personal information of roughly 4,500 customers. It issued another statement on Nov. 29, ***saying that a follow-up investigation found that information on 33.7 million customer accounts—nearly its entire user base—had been exposed.*** This leak included customers' names, email addresses and delivery addresses. The exposed information did not include payment or login details, Coupang said.

93. The New York Times article stated the following regarding legal and regulatory consequences facing Coupang as a result of the data breach:

> Earlier on Wednesday, ***South Korean police investigating the breach raided Coupang's offices in Seoul for a second straight day***. ***Executives were summoned to appear at a hearing to take place next week at South Korea's legislature***, the National Assembly.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

94. On this news, Coupang stock fell $0.87 per share, or 3.2%, to close at $26.06 on December 10, 2025.

95. On December 14, 2025, *Bloomberg* published another article about the data breach titled "Billionaire Coupang Founder Rejects Summons to Data Leak Hearing," which stated that Defendant Kim had "told South Korean lawmakers he won't attend this week's parliamentary hearing ***on the country's largest-ever data breach***, blaming his busy schedule." The article also stated that two executives who had resigned following the breach, including Park Dae-jun, had also "notified lawmakers that they would not attend after they were summoned by the committee."

96. The December 14, 2025 *Bloomberg* article referenced Choi Min-hee, who "heads a parliamentary committee for science, ICT, and broadcasting" as stating that "Coupang may attempt to flee beyond the nation's borders, but its responsibility cannot escape those borders[.]" The article stated that South Korean lawmakers were examining further legal action against Coupang:

> The parliamentary committee rejected the executives' refusal to attend and described the move as a 'systematic evasion of corporate responsibility' that betrays public trust. ***The committee will push for legislation to prevent corporate executives from behaving in this matter, it said in a statement***.

97. On December 15, 2025, The Korea Times published an article titled "Coupang data breach fuels calls to expand class action lawsuits." The Korea Times Article discussed potential legal reforms in South Korea specifically due to widespread public anger over the Coupang data leak. The President of South Korea, Lee Jae Myung, according to the Korea Times Article, had urged the "swift" introduction of a class action system in response to the breach, and quoted President Lee as stating that "[e]very Korean has been affected. It makes no sense to ask each victim to file an individual lawsuit[.]" Further, the Korea Times Article stated that President Lee's comments ***came as public anger mounted over the leak of personal information belonging to 33.7 million Coupang users*** — roughly two-thirds of Korea's population of 51.7 million."

98. On December 15, 2025, Beinsure Media published an article titled "Coupang data breach traced to ex-employee with system access." The Beinsure Media Article stated that the breach had been "traced to a ***former*** employee who ***retained access*** to internal systems ***after***



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

***leaving [Coupang]***, according to South Korean police." The Beinsure Media Article further stated:

> As the investigation [of the Breach] progressed, police identified the primary suspect as a 43-year-old Chinese national who previously worked at Coupang.
>
> According to JoongAng Daily, the man joined the company in November 2022 and was assigned to authentication management systems. ***He left the firm in 2024 but allegedly retained access credentials***. Authorities believe he has already left South Korea.
>
> Investigators said Coupang is currently treated as the victim in the case***. Still, they warned that if negligence or legal violations emerge, the company and staff responsible for safeguarding customer data could face liability***.

99. On this news, Coupang stock fell $1.30 per share, or 5.07%, to close at $24.33 on December 15, 2025. The next day, Coupang stock fell a further $1.14 per share, or 4.68%, to close at $23.19 on December 16, 2025.

100. On December 16, 2025, after the market closed, Coupang issued a press release, filed with the SEC on Form 8-K, admitting that on November 18, 2025, Coupang and Coupang Corp. "became aware of a cybersecurity incident involving unauthorized access to customer accounts." The press release stated:

> On November 18, 2025, Coupang Corp. ("Coupang Corp."), a wholly-owned Korean subsidiary of Coupang, Inc. (Coupang Corp., together with Coupang, Inc. ("Coupang, Inc.," "our," or "we") and its subsidiaries and affiliates, "Coupang,"), became aware of a cybersecurity incident involving unauthorized access to customer accounts (the "Incident"). Upon discovery, Coupang activated its incident response processes, disabled the threat actor's unauthorized access, reported the Incident to the relevant Korean regulatory and law enforcement authorities, and warned customers whose data was potentially accessed.
>
> Based on investigative findings, ***Coupang has determined that a former employee may have obtained the name, phone number, delivery address, and email address associated with up to 33 million customer accounts, and certain order histories for a subset of the impacted accounts.*** To Coupang's knowledge, the former employee has not publicly disclosed the obtained data. No Coupang customers' banking information, payment card information, or login credentials were obtained or otherwise compromised in the Incident. Coupang is continuing its investigation and has engaged external forensic experts to assist with the investigation. ***Korean regulators have initiated investigations with which Coupang is fully cooperating. While one or more Korean regulators***



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> ***will potentially impose financial penalties, at this time we cannot reasonably estimate any amount of losses or range of losses that may result from such penalties.***
>
> Coupang's operations have not been materially disrupted. Coupang remains subject to various risks due to the Incident, including diversion of management's attention and potentially material financial losses resulting from the potential loss of revenue and potential higher expenses, including from remediation, regulatory penalties, and litigation.
>
> The former chief executive officer of Coupang Corp., our Korean subsidiary, resigned on December 10, 2025, and Harold L. Rogers, General Counsel and Chief Administrative Officer of Coupang, Inc., is serving as interim chief executive officer of the Korean subsidiary.

101. On this news, Coupang stock fell $0.47 per share, or 2.02%, to close at $22.72 on December 17, 2025.

102. On December 29, 2025, Coupang issued a press release updating investors on investigation into the data breach. The press release represented that "only saved limited data from approximately 3,000 customer accounts had been accessed." The press release further announced plans to distribute vouchers worth around 1.685 trillion won, or around $1.2 billion, starting January 15, 2026. The press release stated that Coupang would notify the 33.7 million customer accounts that were affected by the breach about the purchase vouchers via text messages.

103. On January 14, 2026, Korea JoongAng Daily published an article titled "Data protection agency tells Coupang to stop publishing unconfirmed information about data breach." The Korea JoonAng Daily Article stated that the PIPC directed Coupang to "stop publishing its own findings" about the data breach, "warning that unverified, unilateral statements as facts was a deliberate attempt to mislead the public and obstruct the official investigation." The PIPC said "Coupang had disclosed information that authorities have not confirmed through a formal probe."

104. The Korea JoonAng Daily Article further stated that during a review of Coupang's response to the breach and compliance with improvement recommendations, the PIPC took issue with Coupang's conduct:

> [T]he PIPC took issue with Coupang's notice that was based on statements obtained through the company's own contact with a former employee identified as the



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> suspected source of the leak, even as the official investigation continued. The watchdog said Coupang presented those statements as if authorities had verified them.
>
> The commission said such disclosures could complicate efforts to determine the exact nature of the leaked information and the scope of the damage, and could lead the public to misinterpret the situation. It added that the practice could amount to interference with the commission's investigation and ran counter to the intent of its earlier resolutions calling for corrective action.
>
> ***
>
> The commission also warned that Coupang has repeatedly failed to submit requested materials or submitted them late, saying such conduct could constitute obstruction of an investigation and could be treated as an aggravating factor in any future sanctions.

105. On this news, Coupang stock fell $1.18 per share, or 5.37%, from a closing price of $21.97 on January 13, 2026 to a closing price of $20.79 on January 14, 2026.

106. On February 10, 2026, the South Korean government released the results of its official investigation, characterizing the breach as a management failure, rather than a sophisticated cyberattack and confirming that approximately 33.7 million customer records were affected.

107. On this news, Coupang stock fell $0.29 per share, or 1.56%, from a closing price of $18.54 on February 9, 2026 to a closing price of $18.25 on February 10, 2026.

## RECENT DEVELOPMENTS

108. Coupang's post-breach conduct has been highly controversial. South Korean authorities have accused the Company of actively attempting to control the narrative and interfere with the official probe.

109. Despite a multi-agency investigation by the South Korean government commencing upon disclosure of the breach, in December 2025, Coupang met with the former employee responsible for the breach and retrieved devices used in the breach. The Company also conducted its own forensic analysis before handing the device over to police and announced the results of its own internal investigation to investors. Investigators later discovered and retrieved another device that the former employee had, after being contacted by Coupang, attempted to destroy by smashing and depositing into the river.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

110. During a National Assembly hearing in late 2025, interim CEO Rogers was asked to explain why Coupang had conducted its own investigation rather than letting law enforcement handle it. Rogers, under oath, testified that the Company's internal investigation and contact with the suspect were directed by the South Korean government's National Intelligence Service ("NIS"). However, NIS publicly denied providing such direction, calling Rogers' testimony a "blatant falsehood." Consequently, the National Assembly filed a perjury complaint against Rogers.

111. Rogers was summoned by South Korean police for questioning but left the country, ignoring police summonses. Coupang claimed Rogers' departure was a "pre-scheduled business trip." Rogers eventually returned and faced questioning by the police, who initiated an investigation into whether Coupang destroyed or hid evidence relating to the breach and specifically Rogers' role in obstructing a government inquiry.

112. Coupang has disputed the findings of the investigation. For instance, contrary to the government's findings released in the February 10, 2026 report, Rogers stated during a conference call that same day that the incident was "not caused by a systemic failure of security measures, but was the result of a targeted attack, executed by a malicious former employee."

113. On February 26, 2026, Coupang filed its annual report on Form 10-K with the SEC (the "2025 Annual Report"), wherein the Company addressed its cybersecurity risk management and governance. In relevant part, the 2025 Annual Report stated:

> The Coupang executive leadership team provides oversight and guidance on cyber policies, procedures, and strategies. Our Board of Director's role in risk oversight is consistent with our leadership structure, with the executive leadership team having responsibility for assessing and managing risks we face in executing our business plans, and the Board and its committees providing oversight in connection with those efforts.
>
> In addition to the full Board, the Audit Committee of the Board plays an important role in the oversight of our enterprise risk assessment and management activities, which identify key risks to our business, including risks related to cybersecurity, data privacy, and regulations, and assesses the Company's strategy to monitor and control such risks. The Audit Committee regularly meets with the CISO to discuss various cybersecurity matters including cyber strategy, cybersecurity risks, controls, results of audits, mitigation strategies, areas of emerging risks, incidents, if



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> any, and industry trends. The Audit Committee provides periodic reports to the full Board regarding cybersecurity matters. We have protocols by which certain cybersecurity incidents that meet established reporting thresholds are escalated within the Company and, where appropriate, reported to the Audit Committee through ongoing updates until resolution.

114. The 2025 Annual Report represented that when Coupang Corp. became aware of the cybersecurity breach at issue herein, it "notified the full Board."

115. As Coupang admitted in the 2025 Annual Report, "[a]s a result of the Incident, we are subject to significant scrutiny by the Korean government, including governmental investigations requiring senior leadership to appear before the National Assembly of Korea, prosecution referrals related to these appearances and failure to appear, and investigations by numerous regulators." The 2025 Annual Report further stated, in relevant part:

> We expect that we will need to pay fines, which could be significant, and may be subject to restrictions on our business. Regulators in Korea have also been conducting inquiries into our business and operations, including with respect to data security and privacy practices. We believe that the Incident has increased and may further increase the Korean government's focus on our business and could result in additional inquiries, enforcement actions, and litigation… We could face additional government investigations, enforcement actions, or claims, and other related costs and expenditures. For instance, regulators in Korea have alleged that we have failed to preserve certain records related to the Incident. The existing investigations and litigation, as well as any new investigations, enforcement actions, or claims could adversely affect our reputation and brand and subject us to criminal sanctions, fines, penalties, judgments, and settlements, and may have a material adverse effect on our business, results of operations, and financial condition.

## COUPANG FAILED TO DISCLOSE THE BREACH AS REQUIRED

116. Item 1.05 of Form 8-K, "Material Cybersecurity Incidents," instructs what a company must report to the SEC once it becomes aware of a material cybersecurity incident. Specifically, Item 1.05 of Form 8-K states:

> (a) ***If the registrant experiences a cybersecurity incident that is determined by the registrant to be material, describe the material aspects of the nature, scope, and timing of the incident, and the material impact or reasonably likely material impact on the registrant, including its financial condition and results of operations.***
>
> (b) A registrant shall provide the information required by this Item in an Interactive Data File in accordance with Rule 405 of Regulation S-T and the EDGAR Filer Manual.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(c) Notwithstanding General Instruction B.1. to Form 8-K, if the United States Attorney General determines that disclosure required by paragraph (a) of this Item 1.05 poses a substantial risk to national security or public safety, and notifies the Commission of such determination in writing, the registrant may delay providing the disclosure required by this Item 1.05 for a time period specified by the Attorney General, up to 30 days following the date when the disclosure required by this Item 1.05 was otherwise required to be provided. Disclosure may be delayed for an additional period of up to 30 days if the Attorney General determines that disclosure continues to pose a substantial risk to national security or public safety and notifies the Commission of such determination in writing. In extraordinary circumstances, disclosure may be delayed for a final additional period of up to 60 days if the Attorney General determines that disclosure continues to pose a substantial risk to national security and notifies the Commission of such determination in writing. Beyond the final 60-day delay under this paragraph, if the Attorney General indicates that further delay is necessary, the Commission will consider additional requests for delay and may grant such relief through Commission exemptive order.

(d) Notwithstanding General Instruction B.1. to Form 8-K, if a registrant that is subject to 47 CFR 64.2011 is required to delay disclosing a Data Breach pursuant to such rule, it may delay providing the disclosure required by this Item 1.05 for such period that is applicable under 47 CFR 64.2011(b)(1) and in no event for more than seven business days after notification required under such provision has been made, so long as the registrant notifies the Commission in correspondence submitted to the EDGAR system no later than the date when the disclosure required by this Item 1.05 was otherwise required to be provided.

117. Form 8-K includes the following instructions to Item 1.05:

- A registrant's materiality determination regarding a cybersecurity incident must be made ***without unreasonable delay after discovery of the incident***.

- To the extent that the information called for in Item 1.05(a) is not determined or is unavailable at the time of the required filing, the registrant shall include a statement to this effect in the filing and then must file an amendment to its Form 8-K filing under this Item 1.05 ***containing such information within four business days after the registrant, without unreasonable delay***, ***determines such information or within four business days after such information becomes available***.

- The definition of the term "cybersecurity incident" in §229.106(a) [Item 106(a) of Regulation S-K] applies to this Item.

- A registrant need not disclose specific or technical information about its planned response to the incident or its cybersecurity systems, related networks and devices, or potential system vulnerabilities in such detail as



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

would impede the registrant's response or remediation of the incident.

118. Coupang did not disclose the information in a Form 8-K by November 24, 2025, four business days after the Company became aware of the data breach on November 18, 2025.

119. Upon information and belief, Coupang did not receive a filing exemption from the Attorney General of the United States to exempt it from reporting the data breach on Form 8-K.

## COUPANG FAILED TO COMPLY WITH INDUSTRY STANDARDS AND FTC GUIDELINES

120. Under widely accepted industry standards, Coupang was required to, at all times, protect customers' personal data from unauthorized access.

121. The Cybersecurity and Infrastructure Security Agency ("CISA") of the United States government has stated that "[p]revention is the most effective defense against ransomware."

122. The Federal Trade Commission ("FTC") has repeatedly emphasized the importance of implementing proper cybersecurity. On its website, a section titled "Cybersecurity Basics" recommends that, at the bare minimum, companies update their software, secure their files, require passwords, encrypt devices, and use multi-factor authentication to protect against cyberattacks. The FTC also recommends that companies "make smart security [their] business as usual" by requiring strong passwords, training all staff, and having a plan for "saving data, running the business, and notifying customers if [a company] experience[s] a breach."

123. The FTC has informed that scammers use personal customer information to commit identity theft and to reap profits by selling such data on the digital black market, stating that "data is currency. The larger the data set, the greater potential for analysis—and profit." According to the FTC, "technological advances and the ability to combine disparate pieces of data can lead to the identification of a customer" even if "the individual pieces of data do not constitute [personal information.]"

124. Further, the FTC Act prohibits companies from engaging in "unfair or deceptive acts or practices in or affecting commerce" and has acknowledged that a company's failure to ensure proper cybersecurity practices to protect customers' private data is an "unfair practice"



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

violates the FTC Act.

125. Despite knowing of the risks associated with human use and their assurances to investors that the Company took precautions to prevent cyberthreats, Coupang failed to establish adequate cybersecurity that could have protected its customers' personal information from unauthorized access, instead leaving such data vulnerable, in violation of common industry standards and the FTC Act. For instance, Coupang failed to revoke the former employee's access credentials, allowing him to access sensitive customer data, and had no detection mechanisms in place to detect the massive breach perpetrated by the former employee, allowing him to access data completely unguarded for approximately six months.

## REPURCHASES DURING THE RELEVANT PERIOD

126. During the Relevant Period, Coupang repurchased its own shares at prices artificially inflated by the failure to disclose the truth and regulatory risks of the cybersecurity breach, causing substantial damage to the Company.

127. According to the 3Q25 Form 10-Q between August 1, 2025 and August 31, 2025, Coupang purchased 2,185,200 shares of its common stock at an average price of $28.37 per share, for a total cost of approximately $62 million. As the Company's stock was actually worth only $18.25 per share, the price at which it was trading when the market closed on February 10, 2026, the Company overpaid for repurchases of its own stock by approximately $22.1 million.

128. According to the 3Q25 Form 10-Q between September 1, 2025 and September 30, 2025, Coupang purchased 650,000 shares of its common stock at an average price of $28.50 per share, for a total cost of approximately $18.5 million. As the Company's stock was actually worth only $18.25 per share, the price at which it was trading when the market closed on February 10, 2026, the Company overpaid for repurchases of its own stock by approximately $6.7 million.

129. Thus, during the Relevant Period, Coupang overpaid for repurchases of its own stock by over $28.8 million.

## INSIDER SALES DURING THE RELEVANT PERIOD

130. During the Relevant Period, while the Company's stock was artificially inflated and before the truth emerged, Defendant Anand sold 150,700 shares of Coupang common stock



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

on inside information, for which he received approximately $4.3 million in total proceeds. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive and participation in the scheme and oversight failure.

131. During the Relevant Period, while the Company's stock was artificially inflated and before the truth emerged, Defendant Franceschi sold 21,428 shares of Coupang common stock on inside information, for which he received approximately $686,767 in total proceeds. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive and participation in the scheme and oversight failure.

132. During the Relevant Period, while the Company's stock was artificially inflated and before the truth emerged, Defendant Sun sold 815,797 shares of Coupang common stock on inside information, for which he received approximately $26 million in total proceeds. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive and participation in the scheme and oversight failure.

**DAMAGES TO COUPANG**

133. As a direct and proximate result of the Individual Defendants' conduct, Coupang has lost and expended, and will lose and expend, millions of dollars. Such expenditures include, but are not limited to:

- legal fees associated with the Securities Class Action filed against the Company and certain executive officers, and other investigations or legal actions taken against the Company, amounts paid to outside lawyers, accountants, and investigators in connection thereto;
- any internal investigations pertaining to violations of law and payments of any fines or settlements amounts associated with the Company's violations;



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- costs incurred from the significant compensation and benefits paid to the Individual Defendants who have breached their duties to Coupang, including bonuses tied to the Company's attainment of certain objectives; and
- the cost of implementing measures to remediate the material weaknesses in the Company's internal controls.

134. As a direct and proximate result of the Individual Defendants' conduct, Coupang has also suffered and will continue to suffer a loss of reputation and goodwill with its business partners, regulators, and shareholders, and a "liar's discount" that will continue to harm Coupang's reputation and harm the Company's stock in the future due to the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

135. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

136. The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

137. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

138. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

are directors of Coupang, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

139. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Coupang and at all times acted within the course and scope of such agency.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

140. Plaintiff incorporates by reference and realleges each and every allegation stated above as if fully set forth herein. Plaintiff brings this action derivatively in the right and for the benefit of Coupang to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties and other misconduct by the Individual Defendants.

141. Coupang is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

142. Plaintiff is a current shareholder of Coupang and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

143. A pre-suit demand on the Board of Coupang is futile and, therefore, excused. At the time this action was commenced, Coupang's Board was comprised of Defendants Kim, Child, Franceschi, Mehta, Sharma, Sun, Toubassy, and Warsh (the "Director Defendants"). Plaintiff is required to show that four of the eight Director Defendants cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, a majority of the Board's current members are incapable of making an independent



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

144. The Director Defendants either knew or should have known of the false and misleading statements and omissions of material fact that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

145. Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

146. Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence, resulting in an unauthorized former employee gaining access to millions of customers' sensitive and personal data.

147. Demand is futile as to Defendant Kim. Defendant Kim founded Coupang and serves as its CEO and Chairman of the Board. Defendant Kim is also a controlling shareholder and as such, provides Defendant Kim with his primary occupation for which he receives compensation. As the Company admits, Defendant Kim is a non-independent director. Further, Defendant Kim signed the SOX certifications attesting to the accuracy of the Form 10-Qs contained herein. As the Company's highest officer during the Relevant Period, Defendant Kim conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded his duties to monitor internal controls, and consciously disregarded his duties to protect company assets. Defendant Kim failed to correct and/or personally made the false and misleading statements and omissions contained herein. Defendant Kim is named as a defendant in the Securities Class Action. Concerningly, Defendant Kim also failed to appear before regulators when summoned in connection with South Korean government's investigation into the breach. For these reasons,



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendant Kim breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on him is futile and accordingly, excused.

148. Demand is futile as to Defendant Child. Defendant Child serves as a Company director, the Chair of the Audit Committee, and a member of the Nominating and Corporate Governance Committee. Defendant Child has and continues to receive compensation for his role at the Company. As a trusted Company director, Defendant Child conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded his duties to monitor internal controls, and consciously disregarded his duties to protect company assets. For these reasons, Defendant Child breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on him is futile and accordingly, excused.

149. Demand is futile as to Defendant Franceschi. Defendant Franceschi serves as a Company director and a member of the Compensation Committee. Defendant Franceschi has and continues to receive compensation for his role at the Company. As a trusted Company director, Defendant Franceschi conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded his duties to monitor internal controls, and consciously disregarded his duties to protect company assets. Defendant Franceschi also sold Company common stock while the price was artificially inflated as a result of the false and misleading statements and omissions of material fact. For these reasons, Defendant Franceschi breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on him is futile and accordingly, excused.

150. Demand is futile as to Defendant Mehta. Defendant Mehta serves as a Company director. Defendant Mehta has and continues to receive compensation for his role at the Company. As a trusted Company director, Defendant Mehta conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded his duties to monitor internal controls, and consciously disregarded his duties to protect company assets. For these reasons, Defendant



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Mehta breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on him is futile and accordingly, excused.

151. Demand is futile as to Defendant Sharma. Defendant Sharma is a company director and a member of the Compensation Committee. Defendant Sharma has and continues to receive compensation for her role at the Company. As a trusted Company director, Defendant Sharma conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded her duties to monitor internal controls, and consciously disregarded her duties to protect company assets. For these reasons, Defendant Sharma breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on her is futile and accordingly, excused.

152. Demand is futile as to Defendant Sun. Defendant Sun serves as a Company director, the Chair of the Compensation Committee, and a member of the Audit Committee. Defendant Sun has and continues to receive compensation for his role at the Company. As a trusted Company director, Defendant Sun conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded his duties to monitor internal controls, and consciously disregarded his duties to protect company assets. Defendant Sun also sold Company common stock while the price was artificially inflated as a result of the false and misleading statements and omissions of material fact. For these reasons, Defendant Sun breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on him is futile and accordingly, excused.

153. Demand is futile as to Defendant Toubassy. Defendant Toubassy serves as a Company director and a member of the Audit Committee. Defendant Toubassy has and continues to receive compensation for her role at the Company. As a trusted Company director, Defendant Toubassy conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded her duties to monitor internal controls, and consciously disregarded her



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

duties to protect company assets. For these reasons, Defendant Toubassy breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on her is futile and accordingly, excused.

154. Demand is futile as to Defendant Warsh. Defendant Warsh has and continues to receive compensation for his role at the Company. As a trusted Company director, Defendant Warsh conducted little, if any, oversight of the schemes to cause the Company to make and/or cause the Company to make false and misleading statements and omissions of material fact, consciously disregarded his duties to monitor internal controls, and consciously disregarded his duties to protect company assets. For these reasons, Defendant Warsh breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand on him is futile and accordingly, excused.

155. As members of the Audit Committee, Defendants Child, Sun, and Toubassy (the "Audit Committee Defendants") were responsible for the effectiveness of the Company's internal controls, risk oversight, and compliance with applicable laws and regulations. During the Relevant Period, the Audit Committee Defendants violated the Audit Committee Charter by engaging in or permitting the Company to engage in the dissemination of materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law; failed to adequately exercise their risk management and risk assessment functions; and failed to ensure adequate Board oversight of the Company's internal controls, including cybersecurity mechanisms. The Audit Committee Defendants' failure to ensure the Company had proper cybersecurity safeguards resulted in a former employee's undetected and unauthorized access in internal systems. Thus, the Audit Committee Defendants breached their fiduciary duties, are not independent or disinterested, and thus demand is excused as to them.

156. As Defendant Kim is a controlling shareholder of Coupang, each Director Defendant is beholden to Defendant Kim and therefore cannot act independently in considering a demand.

157. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

misleading statements alleged herein. Further, the Director Defendants failed to comply with laws and regulations, maintain the accuracy of Company records and reports, avoid conflicts of interest, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct. Thus, the Director Defendants breached the Company's Code of Conduct, are not disinterested, and demand is futile as to them.

158. The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of duty. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

159. The acts complained of herein constitute violations of fiduciary duties owed by Coupang's officers and directors, and these acts are incapable of ratification.

160. The Individual Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds i.e., monies belonging to the stockholders of Coupang. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Coupang, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

161. If there is no directors' and officers' liability insurance, then the directors will not cause Coupang to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

162. The Director Defendants have not filed any lawsuits against themselves or any others who were responsible for the wrongful conduct to attempt to recover damages Coupang suffered and continues to suffer thereby. Thus, any demand on the Director Defendants would be futile.

163. Thus, for all of the reasons set forth above, a majority of Coupang's current directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## CLAIMS FOR RELIEF

### CLAIM I
***Against the Individual Defendants for Violation of Section 10(b) of the Exchange Act and Rule 10b-5***

164. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

165. During the Relevant Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

166. The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit during the Relevant Period.

167. Not only is Coupang now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company is one of the largest



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

victims of the unlawful schemes perpetrated on Coupang by the Individual Defendants' misconduct, as the Individual Defendants caused the Company to repurchase millions of its own shares at artificially inflated prices.

168. The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority, the Individual Defendants were able to and did control the conduct complained of and the content of the public statements disseminated by Coupang.

169. The Individual Defendants acted with scienter during the Relevant Period in that they had either actual knowledge of the scheme and the misrepresentations and/or omissions of material fact or acted with reckless disregard for the truth in failing to ascertain and disclose the true facts which were available to them. As a result, the Individual Defendants are directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

170. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated.

171. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

## CLAIM II

***Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act***

172. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

173. During the Relevant Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

174. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

by the Company which had become materially false or misleading.

175. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Relevant Period. Throughout the Relevant Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

176. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff complains.

177. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

178. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

**CLAIM III**

***Against the Individual Defendants for Breach of Fiduciary Duty***

179. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

180. The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

181. The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, good faith, candor, oversight, and supervision.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

182. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of fiduciary duties to protect the rights and interests of Coupang.

183. The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls. As a consequence, the Individual Defendants caused or allowed the issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures.

184. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose that: (i) Coupang suffered a data breach because of its inadequate internal controls whereby a former employee had access to customer information for approximately six months; (ii) Coupang engaged in cybersecurity misconduct; and (iii) as a result, Coupang suffered increased legal and regulatory scrutiny. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

185. In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and misleading statements and/or omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

186. The Individual Defendants caused the Company to fail to maintain internal controls and defensive cybersecurity prevention and detection mechanisms in breach of their fiduciary duties.

187. Further, at least three of the Individual Defendants breached their fiduciary duties by engaging in insider trading by selling shares of Coupang common stock while the prices were artificially inflated before the truth was exposed.

188. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

189. As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

190. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

191. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

**CLAIM IV**
***Against the Individual Defendants for Unjust Enrichment***

192. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

193. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Coupang.

194. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Coupang that were tied to the performance or artificially inflated valuation of Coupang, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

195. Plaintiff, as a shareholder and a representative of Coupang, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

196. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

**CLAIM V**
***Against the Individual Defendants for Abuse of Control***

197. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

198. The Individual Defendants' misconduct alleged herein constituted an abuse of their control over Coupang, for which they are legally liable.

199. As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

200. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

**CLAIM VI**
***Against the Individual Defendants for Waste of Corporate Assets***

201. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

202. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time-period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

203. As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, inter alia: (i) paying and collecting excessive compensation and bonuses; (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including investigation and defending the Company and its officers against the Securities Class Action; and (iii) causing Coupang to repurchase its own stock for artificially inflated prices.

204. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

205. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

**CLAIM VII**
***Against the Individual Defendants for Gross Mismanagement***

206. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

207. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Coupang in a manner consistent with the operations of a publicly held corporation.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

208. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Coupang has sustained and will continue to sustain significant damages.

209. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

210. Plaintiff, on behalf of Coupang, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B. Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C. Awarding punitive damages;

D. Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Respectfully submitted,

**CORR CRONIN LLP**

*/s/Colin George*
Colin George, WSBA No. 45131
1015 Second Avenue, Floor 10
Seattle, WA 98104
Telephone: (206) 501-3544
cgeorge@corrcronin.com

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim (*pro hac vice* forthcoming)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

**VERIFICATION**

I, Nathan Wilson am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

Signed by:

9AE0BF2BB4144E0...

Dated: 3/17/2026 Nathan Wilson